# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| FRENCHE SALAIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-206-TLS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Frenche Salaiz, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. In September 2012, the Plaintiff protectively filed an application for Disability Insurance Benefits, alleging disability beginning on January 1, 2010. The Plaintiff alleges multiple impairments, including: right leg amputation, neck problems, left knee pain and weakness, Bell's palsy, depression, lower back pain, and carpal tunnel syndrome. The Plaintiff is 58 years old, and has not engaged in substantial gainful activity since the alleged onset date of January 1, 2010.

An Administrative Law Judge (ALJ) held a hearing on October 19, 2013, at which the Plaintiff—who was represented by an attorney—and a vocational expert both testified. On April 22, 2014, the ALJ found that the Plaintiff was not disabled. The Plaintiff requested review of the ALJ decision, and on June 16, 2015, the Appeals Council denied the Plaintiff's request for review. On August 6, 2015, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. For the following reasons, the ALJ's decision is reversed and remanded for proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 398, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand

is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Charter*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The first step is to determine whether the claimant is presently engaged in substantial gainful activity. Here, the Plaintiff is not engaged in substantial gainful activity, so the ALJ moved to the second step, which considers whether the claimant had a "severe" impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff has the following severe impairments: right knee disarticulation level amputation with prosthesis, obesity, and carpal tunnel syndrome.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the impairments listed by the Social Security Administration as being so severe that it presumptively precluded substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Because the Plaintiff's impairment did not meet or equal a listed impairment, the ALJ was required, at step four, to examine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). However, the ALJ also found that the Plaintiff is capable of "lifting, carrying, pushing, and pulling up to 10 pounds occasionally; standing and/or walking (with normal breaks) for approximately 2 hours per 8-hour workday, and sitting (with normal breaks) for approximately 6 hours per 8-hour workday; occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional balancing, stooping, crouching, kneeling, and crawling;" and performing "frequent handling that is gross manipulation." (R. 14–15.) The ALJ added that the Plaintiff can never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to wetness and moderate exposure to hazards of slick or uneven surfaces and unprotected heights.

At the final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

On appeal, the Plaintiff contends that (1) the ALJ failed to consider the Plaintiff's consistent and arduous work history in determining her credibility; (2) the ALJ erred because the

substantial evidence does not support the conclusion that Plaintiff was capable of occasionally climbing ramps and stairs, and occasionally balancing, crouching, kneeling, and crawling; (3) the ALJ erred by not incorporating limitations from all the medically determinable impairments, both severe and non-severe, into the RFC and by not considering the combined impact thereof; and (4) the ALJ improperly evaluated obesity and failed to fulfill the duty to adequately develop the record.

**A.     Credibility**

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678. The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. *Id*. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). However, "once the claimant produces medical evidence of an underlying impairment, the [ALJ] may not discredit the claimant's testimony as to the subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (quoting *Lester v. Charter*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (first citing 20 C.F.R. § 404.1529(c)(2)-(4); and then citing *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).

**1.** *Testimony*

At the hearing on December 19, 2013, the Plaintiff testified that she lives with her husband in a mobile home. (R. 35.) She described her experience with her medical impairments, including amputation of the right leg at the knee, pain and weakness in the left knee, a slipped disc in the neck, ulcers, Bell's palsy, high blood pressure, carpal tunnel syndrome, depression, lower back pain, tail bone pain, and right leg pain. The Plaintiff described her back issues as follows:

> My back I have issues with the lumbar—some—with the muscles tightening. It goes down into my right hip and my buttocks with my—the stump itself. It tightens up. I have it in the middle of my back where it feels like it's out of place. I have to pop it. It hurts and it just aches really bad where sometimes if [sic] becomes more of a severe pain.

(R. 47–48.) When asked why she was unable to continue her most recent employment as a greeter at Meijer, the Plaintiff testified that she "couldn't take it. It was becoming too painful and—with everything, my whole body, I just could not stand there the time that they needed me to—stand in one spot." (R. 37–38.) She claimed that the most she could stand was twenty minutes to a half hour and "[w]ith standing in one spot I have to move, I have to sit down." (R. 57.) Plaintiff also testified that when she was a warranty clerk, she needed help lifting bulky or heavy objects, but was unaware of how heavy the objects were when she needed assistance. (R. 43.) Although the Plaintiff was not prescribed any medications for her back, she was advised to take over-the-counter pain medication. (R. 49.)

Additionally, the Plaintiff described her issues pertaining to her prosthetic leg. She testified that she had balance issues resulting from her amputation and has had multiple falling

episodes, which have led to additional injuries. (R. 51.) She described her balance issues as follows:

> I had a couple bad falls in the last year to six months . . . . [p]artially because the prosthetic wasn't fitting well. I lost my balance. I had issues of falling over nothing. I would just fall. And due to the falls and with the adjustments and everything on the prosthetic now, I use a cane every time I'm on my feet.

(R. 52.) Plaintiff also testified that she frequently uses a wheelchair to get around while at home. (R. 60.)

Plaintiff testified about additional issues with her non-amputated leg, knee, foot, and ankle. She said the following about these ailments:

> The leg, the knee has gotten to the point where it creaks, sounds like it's crackling. When I stand up on it at times it wants to give out. I have loss of strength in it, the ankle and the foot also feels like it wants to give out on me when I stand up. Specifically when I go to the bathroom I cannot get my wheelchair in if I'm in the wheelchair and so if I have to hop across a couple of feet to get to the bathroom then it wants to give out on me. So I have issues with being very careful to make sure I don't fall.

(R. 54.) The Plaintiff also testified about her wrists, specifically stating that she had been diagnosed with moderate to severe carpel tunnel syndrome; however, she did not testify as to how the ailment affects her. (R. 55.) Finally, the Plaintiff testified that she had problems sitting and had to frequently reposition herself to stay comfortable. (R. 56.)

Due to her medical impairments, the Plaintiff said she is limited to performing basic household chores such as light dusting, dishwashing while standing for no more than 5–7 minutes straight without a break, and cooking simple dinners. (R. 58–62.)

At the hearing, the ALJ posed the following hypothetical to the vocational expert (VE):

> Now, assume a hypothetical individual with the past jobs you described. Further assume that the individual is limited to lifting, carrying, pushing and pulling up to 20 pounds occasionally and up to ten pounds frequently, standing and/or walking with normal breaks for approximately six hours per eight hour workday and sitting with normal breaks for approximately six hours per eight hour workday, limited to occasional climbing of ramps or stairs, never climbing ladders, ropes or

7

scaffolds, limited to occasional balancing, stooping, crouching, kneeling and
crawling. The individual should avoid concentrated exposure to wetness and
moderate exposure to hazards of slick uneven surfaces and unprotected heights.
Can the hypothetical individual perform any of the past jobs you've described?

(R. 71–72.) The VE responded affirmatively, claiming that the Plaintiff was capable of performing her previous job as a warranty clerk and was also capable of working as an office manager.

**2.**     *ALJ's Credibility Determination*

In assessing the credibility of the Plaintiff's statements, the ALJ determined that her position was not supported by the objective medical evidence, therefore the testimony was "not entirely credible." (R. 22.) The ALJ placed particular emphasis on the evidence showing that the Plaintiff's various conditions were improving, or, at the very least, were being adequately treated. The ALJ noted that the Plaintiff was responding well to her treatment for Bell's palsy and did not require ongoing treatment. As for the back pain and left knee osteophyte, the ALJ found that the Plaintiff responded well to conservative treatments and did not require surgical intervention or aggressive physical medicine. Further, the ALJ assumed that the replacement of the Plaintiff's prosthesis suggested that she could return to work as before.

The Plaintiff argues that the ALJ erroneously discounted her credibility because the ALJ failed to consider her consistent work history in determining her credibility. An ALJ's credibility determinations are entitled to special deference. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The Plaintiff asserts that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). While the Plaintiff demonstrated that she had a consistent work history, the Defendant correctly notes that it was recently clarified that "work history is just one factor

among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)) (stating that even though the plaintiff had a good work history, the ALJ's decision as to the plaintiff's lack of credibility was affirmed because the credibility analysis was based on other considerations, such as the Plaintiff's "activities of daily living, his routine, conservative medical treatment since 2011, and many earlier reports of minimal or no pain"). Such a discussion of these factors is necessary because "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). "[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence." *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014).

The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence, without even acknowledging the Plaintiff's extensive testimony about her difficulties performing daily activities and work activities. Specifically, the ALJ only relied upon the Plaintiff's responses to medical treatment for her back pain and left knee osteophyte, Bell's palsy, and her loose prosthesis. Although the ALJ recognized the Plaintiff has been able to work in the past with a prosthesis, the ALJ did not otherwise explain how the Plaintiff's work history affected her decision on credibility. This may usually be excusable, *see Loveless*, 810 F.3d at 508, but this oversight is compounded by the ALJ's additional failure to consider the other relevant factors, such as activities of daily living, the Plaintiff's routine, earlier reports of pain, or other similar factors. The parties do not dispute that the Plaintiff has a lengthy work history, but the ALJ provided no insight into why this consideration, which would normally benefit a plaintiff, seemed to have counted against her. *Hill*, 807 F.3d at 868; *Goins*, 764 F.3d at 679

9

(noting that the plaintiff testified her condition has worsened and reminding that "'even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits,'" which is especially true when a plaintiff works part time (quoting *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012))). The Plaintiff testified that she could no longer meet the demands of her part-time job and was experiencing greater difficulties performing basic tasks like using the bathroom. On remand, the ALJ may very well find that the Plaintiff's testimony about her symptoms and their functional effects is not credible, but that decision must be reached by considering more than just the medical evidence.

**B.     Opinions of Treating Physicians**

The Plaintiff also contends that the ALJ erred when analyzing the evidence offered by physicians (1) by improperly evaluating the Plaintiff's obesity; (2) because the evidence does not support the conclusion that Plaintiff could occasionally climb ramps and stairs and occasionally balance, crouch, kneel, and crawl; and (3) by failing to take into account all medical ailments and the combinations thereof.

In the Notice of Decision, the ALJ referenced Plaintiff's claim of obesity on multiple occasions when stating her body measurement. (R. 12–13.) Specifically, the ALJ noted that in November 2012, Dr. Shashank Kashyap, M.D., an independent consultative physician, found that the Plaintiff weighed 213 pounds and was 5 feet 3 inches tall, corresponding to a BMI of 37.73. (R. 19.) The ALJ gave Dr. Kashyap's testimony partial weight. In March 2013, Dr. Liechty, M.D., whose opinion the ALJ afforded great weight,[1] found that the Plaintiff weighed

---

[1] Dr. Liechty was an acceptable medical source and was a treating physician for the Plaintiff, but the ALJ did not give Dr. Liechty's testimony controlling weight. The basis for this is unclear, as no explanation was provided and the ALJ did not discuss the checklist factors necessary to support the denial of

10

214 pounds and was 5 feet 2 inches tall, corresponding to a BMI of 39.14. (R. 18.) While this Court does not determine issues of fact, for the purposes of this case, the testimony of Dr. Liechty will be used to gauge the Plaintiff's height and weight because the ALJ gave his findings more weight than Dr. Kashyap's findings.

Although it may constitute harmless error where both the plaintiff and the ALJ failed to address the effects of obesity, *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (per curiam), remand may be appropriate when the ALJ fails to adequately discuss the effects of obesity when the plaintiff is morbidly obese or nearly-morbidly obese. *See Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014) ("[T]he likely difficulties that morbidly obese persons (and the plaintiff is almost morbidly obese) face even in doing sedentary work are sufficiently obvious to have required the administrative law judge to instruct the consulting physician to consider the potential effect of the plaintiff's obesity on her ability to do sedentary work.").

After mentioning that obesity was considered a "severe impairment," and that the Plaintiff qualified as obese, the ALJ stated, "[t]he claimant's weight, including the impact on her ability to ambulate, as well as her other body systems, has been considered within the functional limitations determined herein." (R. 13.) However, the ALJ did not discuss the effects of Plaintiff's obesity in any detail beyond the aforementioned statement. *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) ("Like most obese people, the plaintiff can walk. Her obesity is not disabling in itself. But it is an added handicap for someone who has [other health problems]."). There must be evidence specific enough to allow a reviewing body to understand the ALJ's reasoning as to the effect of the Plaintiff's ailment. *Craft*, 539 F.3d at 678. As already noted, the Plaintiff's treating physician calculated her BMI to be 39.14, and the Plaintiff testified that she

---

controlling weight. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer good reasons for discounting the opinion of a treating physician.").

weighed the same amount on the date of the hearing. *Browning*, 766 F.3d at 707 (noting that a BMI of 38.7 made the plaintiff nearly morbidly obese). Considering that the Plaintiff's BMI is even higher than that of the plaintiff in *Browning*, the ALJ's complete silence is more concerning. *Id*. (remanding after criticizing the ALJ's failure to discuss how the plaintiff's obesity might limit her ability to do even sedentary work, as obesity would likely make sitting for long periods difficult and standing from time to time might be painful given her existing leg pain). The ALJ's inclusion of the Plaintiff's BMI measurements, and a one-sentence statement that her weight was considered, provides no insight into how her weight affects her ability to work. This lack of analysis regarding the Plaintiff's obesity fails to present an adequate discussion of one of Plaintiff's serious medical ailments. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that the ALJ has an obligation to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding).

At the fourth and fifth steps of the disability evaluation, "the ALJ must consider an assessment of the claimant's [RFC]." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Dixon v. Massanari*, 240 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545(a)(1). The RFC must be assessed based on all the relevant evidence in the record. *Young*, 362 F.3d at 1000–01 (citing § 404.1545(a)(1)).

The ALJ determined that the Plaintiff was capable of "occasional climbing of ramps and stairs; . . . occasional balancing, stooping, crouching, kneeling, and crawling." (R. 14.) According to the Dictionary of Occupational Titles, "occasional" means "up to 1/3 of the time." Dictionary of Occupational Titles, App. C (4th ed. 1991); SSR 83-14, 1983 WL 31254, at *2.

12

This means that the ALJ found that Plaintiff is capable of climbing ramps and stairs for up to 2 hours and 40 minutes in an 8-hour work day. The Plaintiff's prosthesis caused a significant hindrance to her ability to climb ramps or stairs. Dr. Liechty, whose opinion was given the most weight by the ALJ, noted that the Plaintiff had a loose prosthesis and recommended that the limb either be replaced or repaired. (R. 378.) No further evidence was given by Dr. Liechty as to Plaintiff's ability to walk with the new prosthesis, only that it had been delivered. (R. 392.) The ALJ noted that the delivery of a new prosthesis, not medical testimony based on the Plaintiff's actual use of the new prosthesis, "suggest[ed] that [Plaintiff] could return to work as before." (R. 22.)

In some similar scenarios, courts have declined to remand cases where plaintiffs with defective prosthetic devices were given replacements. *See Engelhardt v. Colvin*, 588 F. App'x 551, 551 (9th Cir. 2014). However, the ALJ had evidence of the plaintiff's ability to ambulate based on actual use of the new devices. *See id.* Here, the evidence of the delivery of the new prosthesis, as opposed to the actual use of the new prosthesis, is not sufficient to conclude that Plaintiff is now capable of climbing ramps and stairs for up to one-third of a work day. The ALJ provided only an assumption that a new prosthesis would solve the problems that were causing the Plaintiff to have falling episodes and balance issues severe enough to require the use of a cane during ambulation. This assumption is not a sufficient logical bridge between the facts and the ALJ's conclusion on the Plaintiff's RFC. Therefore, there is not substantial evidence to support the conclusion that the Plaintiff is capable of occasionally climbing stairs and or ramps for up to 2 hours and 40 minutes per 8-hour work day or that the Plaintiff is capable of balancing, crouching, kneeling, or crawling for up to 2 hours and 40 minutes per 8-hour work day.

Plaintiff also claims that the ALJ failed to properly assess the combined effects of every medical ailment. Because remand is appropriate for the issues discussed above, the ALJ should also consider whether she adequately discussed how the Plaintiff's minor medical issues could have a combined effect significant enough to impede the Plaintiff's ability to work.

## CONCLUSION

For the reasons stated above, the decision of the ALJ is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED on August 11, 2016.

                                           s/ Theresa L. Springmann
                                           THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT